SCHNEIDER & DAVIS V. F. W. SANDERS ET AL.

Decided January 24, 1901.

**1.—Evidence—Parol Testimony—Consideration of Contract.**

Parol evidence is admissible, as between the parties, to show the true consideration of a contract; and where a bill of sale recited a cash consideration, evidence that, in addition thereto, the transfer was made in payment of the entire indebtedness of the maker, who was thereupon to have returned to him a note he had delivered to plaintiffs, was not inconsistent with the consideration so recited.

**2.—Same—Hearsay—Harmless Error.**

Where certain hearsay evidence was not objected to until after it had been introduced, and there was no motion to strike it out, and it could not have affected any issue in the case, its admission was not reversible error.

**3.—Charge of Court—Issue Sufficiently Presented.**

Where plaintiff's contention was that defendant was liable to them for an old debt of his partner, as well as the debts of the firm, and the court charged the jury to find for defendant if he was not indebted to plaintiff in any sum whatever, this was sufficiently comprehensive, and plaintiffs could not complain in the absence of any request by them for a more specific charge.

**4.—Same—Homestead—Assuming Facts.**

Where there was uncontradicted evidence showing that at the time defendant and his wife executed a certain deed he was living on the land with his family; that it was his homestead, and that he had never surrendered the possession, it was not error for the charge to assume that the property was defendant's homestead at such time, and to instruct upon that theory.

**5.—Homestead—Fictitious Sale and Lien—Foreclosure—Notice.**

The holder of a vendor's lien note on homestead property who has notice that the sale of the property was fictitious and simulated for the purpose of procuring credit by means of such note, is not entitled to foreclose a lien on the property.

Appeal from Dallas. Tried below before Hon. Richard Morgan.

*Perkins, Gilbert & Hall,* for appellants.

*Kearby & Muse* and *Thompson & Thompson,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—On August 15, 1892, appellants, instituted this suit in the District Court of Dallas County against F. W. Sanders in trespass to try title to recover two tracts of land, one contain-- ing 28¼ acres and the other 8½ acres, situated in Dallas County. On November 3, 1897, appellants filed an amended petition against F. W. Sanders, and made W. A. Rumbold a party to the suit. This petition set up two counts as ground for recovery. The first count was to recover the land and in the second count it was alleged "that on the 27th day of December, 1900, F. W. Sanders and W. R. Barnes, doing business in the name of W. R. Barnes, were indebted to appellants in the sum of $3952.46; that as collateral security ·for said indebtedness appellants held the note of W. A. Rumbold, payable to F. W. Sanders, and by Sanders indorsed, in the sum of $2756.25, dated September 23, 1890, and payable three years after date, with 10 per cent interest and 10 per cent attorney's fees, said note being secured by a vendor's lien on the land in controversy; that on December 27, 1890, in part payment of their indebtedness, Sanders and Barnes turned over to appellants their stock of groceries, valued at $1500; that on the same day the said Barnes and Sanders transferred and assigned all their notes and book accounts to W. J. Townsend, authorizing him to collect the same and out of said proceeds to pay their attorney's fees in the transaction, and the balance to Schneider & Davis, appellants; that said stock of merchandise and notes and accounts not being sufficient to extinguish the debt of Barnes: and Sanders to appellants, and appellants still holding said vendor's lien note for $2756.25, on September 25, 1891, obtained from W. A. Rum- bold a deed to the land in controversy in payment of said note." Appel- lants prayed for judgment for the land, and in the alternative for judg- ment on the $2756.25 note, against Rumbold, as maker, and Sanders,. as indorser, and for a foreclosure of the vendor's lien on the land.

F. W. Sanders answered by exceptions, pleas of limitation, general denial and not guilty, and among other defenses alleged "that on· the 23d day of September, 1890, the land in controversy was and had been for many years prior thereto his homestead, and was then and had been for many years and was still used and occupied by himself and family for a home; that desiring to go into the grocery business, and having no money, on September 23, 1890, he made a fictitious and pretended sale of his homestead to W. A. Rumbold, who paid no money for the land, but executed to him (Sanders) the $2756.25 note; that the transaction was not intended as a real sale; that Rumbold did not intend to pay the note; knew it was the homestead of Sanders, who remained in pos- session of the premises with his family and is still in possession;

that at this time Barnes owed Schneider & Davis about $1200 on open account, which was closed by Barnes' note, and that then Sanders deposited with appellants the Rumbold note as collateral for groceries to be furnished Barnes and Sanders; that appellants furnished Barnes and Sanders from that time up to about December 27, 1890, groceries amounting to about $3300, upon which they had paid from time to time sums aggregating $1500, leaving the balance due appellants about $1800; that on December 27, 1890, legal proceedings being threatened by some of Barnes' old creditors, in payment of their entire indebtedness to appellants, Barnes and Sanders turned over to Schneider & Davis their entire stock of groceries of the value of $2000, and assigned and delivered to W. J. Townsend, bookkeeper for appellants, all their notes and book accounts, aggregating about $2500. That appellants accepted the stock of merchandise and the assignment of the notes and accounts in full payment of the indebtedness of Barnes and Sanders, for which said $2756.25 note had been put up as collateral, and promised to deliver said note to Sanders, but failed to do so, and afterwards, on the 25th day of September, 1891, procured Rumbold to make them a deed to the land. Sanders charged appellants with notice that the sale to Rumbold was fictitious, with notice that the land in controversy was his homestead, and occupied by him and his family as a home. Sanders also plead in his supplemental answer that the sonsideration of $1500 in the bill of sale and $2356.46 in the chattel mortgage were inserted through fraud, accident, and mistake, and were not the true consideration; that the true consideration for the execution of said instruments was the payment in full of all Barnes' and Sanders' debts to Schneider & Davis. Sanders asked for a cancellation of the Rumbold note, the deed to Rumbold, and from Rumbold to Schneider & Davis.

On February 16, 1899, Hattie Herndon, formerly Hattie Sanders, and Harry Sanders filed their plea of intervention, alleging "that the land in controversy was the community property of F. W. Sanders and their mother, Esther Ann Sanders, who died February 2, 1884, leaving F. W. Sanders and interveners in possession of said land, all of whom have resided on the land since that time, and are now residing on said land. They charged Rumbold and appellants with notice of the facts set out in their plea of intervention. They prayed for a cancellation of the deed from F. W. Sanders and wife, Lucy Sanders, to Rumbold, and of the deed from Rumbold to Schneider & Davis, and for judgment for a one-half undivided interest in the land. Rumbold made default. The case was tried before a jury on June 21, 1899, and resulted in a verdict in favor of appellees."

Judgment was duly entered on the verdict, and plaintiffs have prosecuted an appeal to this court.

*Conclusions of Fact.*—In September, 1890, W. R. Barnes was engaged in the grocery business in Dallas. Appellee F. W. Sanders, desiring to go into the grocery business in Dallas in the month of September, 1890,

went to Schneider & Davis, wholesale grocers in the city of Dallas, and made known to a member of said firm his desire, and stated that all he had to put up as security for groceries was the land upon which he was then living. It was suggested to Sanders by one of the members of said firm that it would be better for him to go in with some one who understood the business and suggested that he go in with Barnes. After negotiation between Sanders and Barnes it was agreed by them that they would form a partnership for the conducting of a grocery business. At that time Barnes was indebted to Schneider & Davis about $1200, which Barnes closed up by his note to the firm. Barnes then suggested that Sanders should execute a deed to W. A. Rumbold, who was conducting a butter and egg business in one part of the business house of Barnes, but who was not otherwise connected with Barnes, to the two tracts of land upon which he (Sanders) lived, aggregating 36¾ acres, and take his (Rumbold's) note in payment thereof, which would be placed as collateral with Schneider & Davis for a line of credit for the new firm. F. W. Sanders, joined by his wife, did execute a deed to said W. A. Rumbold to said land, said deed reciting a cash consideration of $900 and a note for $2756.25. This note was transferred by F. W. Sanders to Schneider & Davis to enable the firm of Barnes & Sanders to obtain a line of credit. Sanders was not to be responsible for the past indebtedness of Barnes to Schneider & Davis, nor was said note intended to secure said past indebtedness. At the time the deed was executed by Sanders and wife to Rumbold the property was the homestead of Sanders and wife. No consideration was paid by Rumbold other than the execution of the note above described, nor was it the intention that any should be paid. The transaction was fictitious as between them, Sanders' object being to use Rumbold's note as collateral security for a line of credit from the firm of Schneider & Davis. The firm of Barnes & Sanders became indebted to Schneider & Davis in the sum of about $3200, and in the latter part of December, 1890, Barnes & Sanders conveyed to Schneider & Davis their entire stock and executed a chattel mortgage upon their notes and accounts to a trustee for the benefit of Schneider & Davis, after paying an attorney's fee of $300. The account of Barnes & Sanders, to Schneider & Davis was fully paid off by the transfer of said stock and the execution of said trust deed. Schneider & Davis at the time the note of Rumbold was transferred to them by Sanders had notice of the fictitious character of the sale by F. W. Sanders and wife to W. A. Rumbold. At the time this deed was made this property was the homestead of Sanders and wife, they being in possession at the time, occupying the same as their homestead, and same has continued to be occupied by them as their homestead.

In September, 1891, W. A. Rumbold, at the request of Schneider & Davis, executed to them a deed to the land in controversy in consideration of his release from liability on his note. Other facts appear in the opinion.

*Conclusions of Law.*—Appellants' first assignment of error complains that the court erred in permitting the appellee F. W. Sanders to testify that the purpose of giving the bill of sale and chatel mortgage was to pay the debts of his firm to Schneider & Davis and protect their property against Barnes' creditors in order that Sanders might regain possession of the vendor's note signed by Rumbold, transferred by witness to appellant. The bill of sale to Schneider & Davis for the notes recited a consideration of $1500. The contention is that parol evidence was not admissible to prove a different consideration than the one recited in the bill of sale, and that said testimony contradicted the terms of the bill of sale. This contention is not tenable. The defendant had plead that the consideration of $1500 was placed in the bill of sale by mistake. In this State the law is well settled that, as between the parties, parol evidence may be introduced to show the true consideration of a contract. Taylor v. Merrill, 64 Texas, 494; 2 Jones on Ev., sec. 476. The evidence admitted was not inconsistent with the consideration recited in the contract. It showed that, in addition to the recited consideration in the bill of sale, the transfer was made in payment of the entire indebtedness of Sanders to Schneider & Davis, and that Sanders was to have returned to him the note executed by Rumbold which he had transferred to Schneider & Davis as collateral security.

The second assignment complains of the action of the court in permitting W. R. Barnes to testify "that Sanders told him, Barnes, that Alfred Davis, one of the plaintiffs, had told Sanders to come over and talk to Barnes about making an assignment; that he, Barnes, replied that if he, Sanders, could not run the business, they might as well make a general assignment."

The testimony was objected to as being hearsay, immaterial, and irrelevant. The bill of exception was allowed by the court with this explanation: "The objection was really not made until after the witness had testified, and when the objection was made I overruled it as the most expeditions mode of disposing of it, inasmuch as it did not seem to me to be at all material whether the testimony was in or out. The evidence showed that Barnes, Sanders, and Schneider & Davis all met subsequently at the office of Schneider & Davis and there agreed to the execution of a bill of sale and chattel mortgage read in evidence, and this testimony of Barnes as to his connection with Sanders was merely an inducement showing how he came to be present at the subsequent meeting in the office of Schneider & Davis, and what was said between Barnes and Sanders and objected to, as set out in the foregoing bill of exception, really did not affect any issue in the case." The objection not having been made until after the witness had testified and the testimony was in, and it further appearing that the evidence was of such a nature that it could not have affected any issue in the case, we conclude there was no error in the court's ruling. There was no motion to strike out the evidence.

The third assignment of error challenges the correctness of that

portion of the court's charge in which the jury were told that " if you find from the testimony before you that when the deed from W. A. Rumbold to plaintiffs which has been introduced in evidence before you was executed by said W. A. Rumbold, the indebtedness of the defendant F. W. Sanders to plaintiffs had been fully paid off, satisfied and discharged, and that said F. W. Sanders was not indebted to plaintiffs in any sum whatever, then you will find for the defendants and interveners." The evidence shows that previous to the time that F. W. Sanders and W. R. Barnes became partners, Barnes had been conducting a grocery business and was indebted to Schneider & Davis in the sum of about $1200. This was closed up by note executed by Barnes. Sanders had specially plead payment in full of all his indebtedness of every character to Schneider & Davis. It was contended by Schneider & Davis that Sanders was liable to them on the old debt of Barnes, as well as the debts of Barnes and Sanders. Upon this issue there was evidence both ways. The jury in the charge complained of are told that if Sanders was not indebted to plaintiffs in any sum whatever, then you will find for defendant and interveners. The jury could not have been misled by this charge. It was sufficiently comprehensive to include every character of indebtedness owing by Sanders to Schneider & Davis.

Again, if the charge was not sufficiently specific, then we think that it was appellant's duty to ask a special charge covering the omission complained of in the court's charge. This they did not, and can not now be heard to complain.

Appellant's fourth assignment of error complains of that paragraph of the court's charge reading as follows: "Or if you find from the testimony before you that before the defendant F. W. Sanders became indebted to the plaintiffs, they, the plaintiffs, knew that said F. W. Sanders and W. A. Rumbold had agreed between them that the deed from said Sanders to said Rumbold for the land in controversy in this suit, which has been testified about before you, was not a bona fide conveyance of said land, but was merely a sham sale made for the purpose of enabling said F. W. Sanders to use as collateral security the note given by said Rumbold to said Sanders and afterwards transferred by said Sanders to plaintiffs, which has been read in evidence before you, and which purports to have been given for a part of the purchase money agreed to have been paid for said land by said Rumbold, and which purports to be secured by a vendor's lien on said land, then you will find for defendant and interveners."

The objection made to this charge is that it is "immaterial whether said sale was a pretense or not unless the plaintiffs also had notice that the land in controversy was at the time of said pretended sale the homestead of said F. W. Sanders, for the reason that there can be a pretended sale made for the purpose of apparently creating a vendor's lien and it will make and create a valid lien upon real estate which is not the homestead, and because the same permits Sanders to obtain a permanent relief on account of his own fraud."

The uncontradicted testimony shows that at the time Sanders and wife executed the deed to Rumbold that he was living on the land with his family, and that it was his homestead, and that he never surrendered the possesion. The court then had the right to assume that the property was the homestead of Sanders at the time the deed was executed to Rumbold, and would have been authorized to have so instructed the jury. The property being the homestead of Sanders and wife, if the sale made by them to Rumbold was fictitious and Schneider & Davis had notice of this fact at any time prior to the time of the transfer of the note to them, then they were not entitled to recover the land or to foreclose the lien thereon against the defendant Sanders and the interveners. There is no error in the charge complained of in the fourth assignment.

The fifth assignment of error complains of the action of the court in refusing the special charge asked by plaintiffs in which the court was requested to give a peremptory instruction to the jury to find a verdict for the plaintiff as against the interveners. It is contended that there is no evidence tending to prove a case in favor of the interveners, in that there was no notice to plaintiffs of the claim of interveners. The uncontradicted evidence showed that the land in controversy was the community homestead and property of F. W. Sanders and Esther Ann Sanders, the father and mother of interveners; that Esther Ann Sanders died in 1885. After her death, F. W. Sanders married Lucy A. Sanders, and continued to reside upon the property in controversy. Upon the death of Esther Ann Sanders the interveners became entitled to a half interest, and were entitled to recover in this suit for such half interest, unless they are precluded from doing so by reason of appellant's claim. If the indebtedness of Sanders to Schneider & Davis had been fully paid, then the note executed by Rumbold and transferred by Sanders as collateral to secure his indebtedness to Schneider & Davis became the property of Sanders, and Schneider & Davis had no interest in or lawful claim to the note or land, in which event interveners were entitled to judgment for their half interest in the land. The charge requested by appellant, if given, would have withdrawn from the jury the issue as to whether or not said debt had been paid. This would have invaded the province of the jury. The special charge was properly refused.

The sixth and seventh assignments of error are grouped, and complain of the action of the court in refusing to give special charges numbers 2 and 3, requested by them. We do not think there was an error in refusing these charges. The court's general charge covered the issues presented so far as said charges correctly state the law.

Appellants' eighth assignment of error complains of the action of the court in refusing the following special charge requested by them: "If the jury find from the evidence that defendant, F. W. Sanders, placed the note given him by W. A. Rumbold with plaintiffs for the purpose of securing the indebtedness of W. R. Barnes to plaintiffs, and for securing plaintiffs for any goods sold the firm of W. R. Barnes, in which said Sanders became a partner, and that plaintiffs retained the same and took

a deed from said Rumbold to the land in controversy in satisfaction of said note, and that at the time they took said deed there was a balance due plaintiffs on the account for which they held said note as collateral security; and that they took said deed without the knowledge or consent of said F. W. Sanders, then and in that event defendant Sanders would be entitled to have said conveyance by said Rumbold to plaintiffs set aside, but plaintiffs would be entitled to a judgment against said Rumbold on said note and to a foreclosure of a lien upon the land in controversy to satisfy the amount so due them. And if the jury so finds, the form of your verdict will be, 'We the jury find that the conveyances from Rumbold to plaintiffs should be set aside, and find for the plaintiffs against W. A. Rumbold for $———, and the same is a vendor's lien on the land in controversy; and we find that the firm of W. R. Barnes is justly indebted to plaintiffs in the sum of $———' (filling in the blank with the amount for which said defendant F. W. Sanders is liable.)" There was no error in refusing this charge. Sanders had plead the statute of limitations of two and four years, and further, that he was indorser upon the note executed by Rumbold, which had never been protested, and that sixteen terms of court had passed after the maturity of the note before it was sued upon. The original debt was contracted prior to December, 1890. The appellant never declared on that debt The note was executed Septembr 23, 1890, and bcame due and payable three years thereafter. The note was not declared upon until November 3, 1897. It clearly appears that appellants' right to recover upon the note was barred by the statute of limitations.

Again, if Schneider & Davis had notice of the fictitious character of the deed from Sanders and wife to Rumbold, they would not be entitled to foreclose a lien upon the property, it being the homestead of Sanders. If Sanders' debt had been paid, the note was Sanders', and appellant was not entitled to judgment either as against Sanders or Rumbold. The evidence shows that when the deed was taken from Rumbold to appellants, Rumbold's name on the note was canceled.

Appellants' ninth assignment complains of the verdict of the jury as being contrary to the law and evidence and against the weight of the evidence, and set up with some particularity wherein it is claimed that said verdict is not supported by the evidence. The record shows that upon all the issues submitted by the court's charge there was a conflict of evidence. The jury by their veridct have settled the conflict, and as there is evidence in the record to support their findings, we do not feel authorized to set aside their verdict.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*